BARKER v. TOWN OF OSWEGATCHIE et al.

(Supreme Court, General Term, Third Department. November 30, 1891.)

1. ERECTION OF BRIDGES—POWER OF TOWN TO BORROW MONEY.

A county board of supervisors passed a resolution May 15, 1891, authorizing the authorities of a town therein to enter into a contract for building a bridge, and to borrow a sum, not exceeding $10,000 for that purpose, in pursuance of an application by the supervisor of the town, with the consent of the commissioner of highways, town-clerk, and justices of the peace. Held, in an action by a tax-payer to enjoin the performance of such contract, to be valid, under Const. art. 3, § 18, as amended, providing that the legislature may confer on the county board of supervisors powers of local legislation, and under Laws N. Y. 1875, c. 482, § 1, passed in pursuance thereof, authorizing the board of supervisors of any town liable for the erection of a bridge to borrow money for that purpose, on application and consent of the town authorities.

2. INJUNCTION—DISOBEYING ORDER—EVIDENCE.

The board of supervisors had previously passed a resolution for such purposes, February 8, 1890, which was declared invalid for non-conformity of their proceedings with the statute, and defendants were enjoined from performance of the bridge contract. Afterwards a second proceeding was had, in which all the statutory requirements were observed. Held, that defendants were not guilty of contempt in procuring valid authority for executing the contract in question, and in entering upon the performance thereof.

Appeal from special term, St. Lawrence county.

Action by Matthew Barker against the town of Oswegatchie and Joseph M. McConville and others. From an order refusing to punish certain of defendants as for a contempt, plaintiff appeals. Affirmed. For former reports, see 10 N. Y. Supp. 834, and 11 N. Y. Supp. 942.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

A. D. Wales, for appellant. Daniel Magone, for respondents.

MAYHAM, J. This is an appeal from an order of a special term of this court denying an application to punish Daniel Magone for an alleged contempt for disobedience of an order of injunction granted in this action on the 4th day of April, 1890, restraining the defendants, and each and every of them, "from taking any proceedings, steps, acts, or action whatever under and in pursuance of the supervisors' bill of February 8, 1890, passed by the board of supervisors of St. Lawrence county, with relation to the Eel Weir bridge." This injunction was vacated by an order of the special term on the 26th day of April, 1890, and the order vacating the same was reversed by the general term, and the injunction continued by an order of the general term on the 19th day of September, 1890. At the time of the service of this injunction the defendants, or some of them, were about to engage in the construction of a bridge at Eel Weir rapids under authority claimed to have been derived from an act of the board of supervisors of the county of St. Lawrence, passed February 8, 1890, which act of the board of supervisors was by the determination of this court in the case of Bridge Co. v. Wagner, 10 N. Y. Supp. 840, held to be invalid. On the 15th of May, 1891, the supervisor of the town of Oswegatchie, with the written consent of the commissioner of highways, the town-clerk, and three justices of the peace of that town, applied by a written application to the board of supervisors for authority to borrow money to build a bridge across the Oswegatchie river at Eel Weir rapids,—the place at which the bridge in the illegal act of February 8, 1890, was directed to be constructed,—and the board of supervisors, on such application, passed the following bill:

"An act to authorize the town of Oswegatchie to borrow money for the purpose of building a new bridge across Eel Weir rapids, in the said town, on the site of the present bridge, and appointing commissioners to construct the same, pursuant to chapter 482, Laws 1875, and the several acts supplemental thereto and amendatory thereof. Passed by the board of supervisors

of St. Lawrence Co. on the 15th day of May, 1891, two-thirds of all the members elected thereto voting in favor thereof.   The board of supervisors of St. Lawrence county do enact as follows: Section 1.   The supervisor of the town of Oswegatchie, by and with the consent of the commissioner of highways, town-clerk, and justices of the peace of said town, having applied therefor, said supervisor is hereby authorized to borrow money on the credit of said town,—a sum not exceeding $10,000, at a rate of interest not exceeding 4 per cent. per annum,—and execute the bonds of said town therefor, which bonds and the annual interest thereon shall become due and payable at the Ogdensburgh Bank, in said town, as follows:   Two thousand dollars on the 1st day of February, in each of the years 1892, 1893, 1894, 1895, and 1896, respectively, interest to be paid annually on the 1st day of February on all sums remaining unpaid.   There shall be levied and collected from the taxable property in said town in each year preceding the date at which the said bonds become due such sums of money as shall be required to pay the interest on said bonds and the face thereof at maturity.   Sec. 2.   Said bonds shall be in the usual form of town bonds, with interest coupons, payable to bearer, and shall be signed by the supervisor and countersigned by the town-clerk of said town, and a true record shall be kept thereof by both said supervisor and town-clerk.   The supervisor of said town shall sell said bonds for the highest price he can obtain therefor, but not less than par value; and the whole, or so much of the money received from the sale thereof as shall be necessary, shall be paid over to the commissioners hereinafter provided for, upon their order in payment for the construction of a bridge across the Eel Weir rapids in said town, on the site of the present bridge.   Sec. 3. Before issuing any town bond or bonds under the provisions of this act the supervisor of said town of Oswegatchie shall execute a bond to the said town in the penal sum of $20,000, with two or more sureties, the sureties to justify in the aggregate sum of $20,000; said bond to be in addition to any and all other official bonds required to be given by said supervisor.   The condition of said bond shall be for the faithful performance of his duties under this act in the issuing of the town bonds herein authorized, and for the lawful application of the funds arising therefrom, and the full accounting therefor of all the funds which may be raised by the tax for the payment thereof which may come into his hands annually to the board of supervisors; the bond to be approved by the board of town auditors of said town of Oswegatchie, and filed in the office of the town-clerk.   Sec. 4.   William J. Averill, Fenton Devoy, Alexander Mayne, Henry Lovejoy, and Daniel Magone, of said town, are hereby appointed commissioners for said town, to construct the bridge heretobefore provided for.   Such commissioners shall keep a record of their proceedings, and no action taken by any of said commissioners individually shall in any manner bind said town.   Their order on the supervisor of said town shall be his warrant for payments on account of building such bridge.   They shall, on or before the 1st Monday in November, 1891, and annually thereafter, until such bridge is fully completed, file a verified statement of their expenditures with the town-clerk of said town, which account shall be subject to audit by the board of audits.   The commissioners shall receive three dollars per day for each and every day devoted to the carrying out of their duties under this act.   Sec. 5.   This act shall take effect immediately."

From a careful consideration of all the evidence submitted to the special term on this motion we are unable to find any positive proof that the defendant Magone, in the part he took in these proceedings in reference to the construction of this bridge, did or assumed to do anything under the act of the board of supervisors passed February 8, 1890.   On the contrary, the whole weight of evidence tends to establish that all he has done since the issuing of the injunction which is claimed to have been violated has been done under

and in pursuance of the provisions of the act of May 15, 1891, which is herein set out in full. As to the validity of that act we entertain no doubt. Before the adoption of the amendment of the constitution of 1874, which took effect January 1, 1875, the power rested solely with the legislature to authorize a town to borrow money for the construction of a bridge beyond the amount which a town was authorized by statute to raise for that purpose. By section 18 of article 3 as amended it was provided that the legislature should by general laws confer upon the several boards of supervisors powers of local legislation within their counties, and, in pursuance of that constitutional provision, by chapter 482, Laws 1875, the legislature passed a law conferring additional power of local legislation and administration upon such boards. Subdivision 6 of section 1 of that act confers upon the board of supervisors the power "to authorize any town or towns liable for the erection, care, repair, maintenance, in whole or in part, of any bridge, * * * to borrow such sums in the manner provided by subdivision 29 of this section as may be necessary for the purpose of such erection, care, repair, and maintenance, and to pay any existing debts incurred in good faith by or on behalf of such town or towns before the passage of this act." This section also provides that the power conferred by this act should not be exercised except upon the application of the town by the vote of the majority voting at the regular or special town-meeting, or the application of the supervisor, by and with the consent of the commissioner of highways, town-clerk, and justices of the peace of such town or towns, respectively. By subdivision 29 of this section the board of supervisors may authorize any town to issue bonds. The power which, before the adoption of the constitutional amendment, and before the passage of chapter 482, Laws 1875, pursuant thereto, rested in the legislature upon these subjects of local legislation, was by these enactments transferred to the board of supervisors, and those powers embraced as well the appointment of commissioners to co-operate with the town officers as the power to authorize the town to raise money for the purpose therein specified. In this case the necessity of the erection of this bridge, and the liability of this town for its maintenance or repair, are not disputed, and are abundantly established; and it can hardly be claimed that the effect of the injunction restraining action, under the illegal act of February 8, 1890, could operate as a legal restraint upon the town officers charged with the duties of maintaining this bridge, or from procuring the passage of a legal enabling act by the board of supervisors for its erection and maintenance, or prevent the defendants from operating in the construction of this bridge under the provisions of such legal act. If, therefore, the town officers could legally apply to the board of supervisors, and that board could legally pass this enabling act, it follows that no contempt proceedings can be legally predicated upon the performance of such legal act. The order denying the motion to punish the defendants for contempt must be affirmed. Order affirmed, with $10 costs and printing disbursements.

All concur.